AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | LODGED |
|---|---|
| | CLERK, U.S. DISTRICT COURT |
| | **8/18/2023** |
| | CENTRAL DISTRICT OF CALIFORNIA |
| | BY: _____ jb _____ DEPUTY |

United States of America

v.

ZE XIAN HUANG,

Defendant(s)

Case No.        2:23-mj-04225-duty

| | FILED |
|---|---|
| | CLERK, U.S. DISTRICT COURT |
| | **8/18/23** |
| | CENTRAL DISTRICT OF CALIFORNIA |
| | BY: _____ MR _____ DEPUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 16, 2023, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

*Code Section*

21 U.S.C. § 856(a)(1)

*Offense Description*

Maintaining Drug-Involved Premises

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ *Storm Rakela*
*Complainant's signature*

Storm Rakela, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        August 18, 2023

*Judge's signature*

City and state:   Los Angeles, California

Hon. Maria A. Audero, U.S. Magistrate Judge
*Printed name and title*

AUSA: Derek R. Flores x4896

## AFFIDAVIT

I, Storm Rakela, being duly sworn, declare and state as follows:

## I.   PURPOSE OF THE AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint and arrest warrant against Ze Xian HUANG, also known as "Ze Xian Huanh," for a violation of 21 U.S.C. § 856(a)(1): Maintaining a Drug-Involved Premises. As discussed below, when law enforcement executed a search warrant on HUANG's residence, agents found numerous containers of hazardous chemicals, including precursor chemicals usable to manufacture controlled substances such as 3,4-methylenedioxymethamphetamine (MDMA) and ketamine, laboratory glassware, and other indicia of drug production. HUANG also possessed multiple notebooks in the residence and in his car with dozens of pages of handwritten Chinese that appeared to include "recipe" instructions for manufacturing controlled substances, at least some of which appears to be in coded language. Additionally, HUANG also possessed approximately 2.66 kilograms of suspected ketamine in both large and small plastic bags in his bedroom in the residence.

2.    The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my

i

knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II.   BACKGROUND OF SPECIAL AGENT STORM RAKELA

3.   I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since September 2017. I am currently assigned to the Office of the Special Agent in Charge in Los Angeles, California, Border Enforcement Security Taskforce Los Angeles Metropolitan Group, and the Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force (LA IMPACT) Group 24. I have over 24 years of law enforcement experience. I was a United States Border Patrol (USBP) agent for approximately six years before my employment with HSI. For three of those six years, I was a Task Force Officer with the San Diego USBP Smuggling Interdiction Group/Drug Enforcement Administration (DEA) Title 21 Group. Prior to my employment with the Department of Homeland Security (DHS), I was a Deputy Sheriff for over eleven years for the counties of Sacramento and San Diego in California. I have a Bachelor of Science degree in Psychology from the University of California at Davis, California.

4.   During my employment as a law enforcement officer, I have received training regarding laws pertaining to arrest, search and seizure, and evidence collection. I have also gained practical experience making arrests, conducting searches and seizures, and collecting evidence. This experience spans four

ii

different law enforcement agencies with established training programs.

5.    Additionally, I have had hundreds of hours of formal and informal training in a wide variety of investigative and other law enforcement subjects, including mobile surveillance and drug sales and trafficking investigations. I have received numerous hours of instruction from federal agents, detectives, and other law enforcement officers regarding drug packaging, sales, transportation, and usage. I have received training from court-qualified experts in the fields of gangs, organized crime, general crimes, and drug-related investigations.

6.    I have received specialized training in the fields of criminal investigation by attending numerous courses in criminal law, criminal investigation, drug investigation, and laws of arrest. I have attended surveillance courses, which included mobile and static surveillance. The class also covered counter-surveillance tactics utilized by criminals. I have conducted covert surveillance on residences, vehicles, and individuals that are suspected of selling drugs. During these operations, I have observed individuals use vehicles to smuggle controlled substances into the United States. I also conducted surveillance on vehicles transporting controlled substances and bulk cash within the United States. I have seen individuals use their own personal vehicles, borrow vehicles, or receive vehicles to transport illicit contraband.

7.    I have assisted in serving search warrants for DHS, DEA, the Federal Bureau of Investigation, the California

Department of Justice, LA IMPACT, and local police departments, in connection with investigations regarding drugs, weapons, and various other offenses. I have had specialized training and field experiences in violations dealing with fentanyl, heroin, cocaine, amphetamines, cannabis, depressants, prescription medication, and other dangerous drugs.

### III. SUMMARY OF PROBABLE CAUSE

8.   On July 23, 2023, Customs and Border Protection (CBP) officers intercepted two packages at John F. Kennedy International Airport (JFK) Asiana Cargo Warehouse that each contained large quantities of a methamphetamine and MDMA precursor chemical called methylamine, which is a DEA List I chemical that requires a license to export and import into the United States. The packages' contents were falsely listed as "wallpaper." The two falsely labeled methylamine packages were addressed to a residence located at 1525 S Delta St., in San Gabriel, California (the "San Gabriel Stash House").

9.   Pursuant to an anticipatory search warrant, HSI executed a search warrant at the San Gabriel Stash House on August 16, 2023, after HUANG retrieved the parcels and opened one of them inside the residence.  During their search of the residence, HSI found numerous containers of hazardous chemicals and laboratory glassware in the common areas of the residence. Based on my conversation with a law enforcement officer experienced in investigating drug labs, the residence appeared to contain the vast majority of chemicals needed to manufacture MDMA and numerous chemicals needed to manufacturer other

controlled substances.  Inside HUANG's bedroom, agents also found a large quantity of ketamine --- a Schedule III federally controlled substance --- and drug packaging materials.

10.  HSI also found multiple notebooks with dozens of pages of handwritten Chinese that, based on my conversation with a law enforcement officer that can read Chinese, appeared to include instructions for manufacturing controlled substances. Additional investigation and translation of the notebooks recovered from the residence and HUANG's car is ongoing.

11.  Notably, before executing the search warrant at the San Gabriel Stash House, CBP agents saw HUANG and a co-conspirator load two boxes similar in appearance to the falsely labeled methylamine packages into the trunk of a Grey Toyota Camry that was parked in the driveway of the stash house.  HUANG and the co-conspirator then drove two vehicles and transported the boxes to another location.  HUANG then returned to the San Gabriel Stash House without the package.

## IV.   STATEMENT OF PROBABLE CAUSE

12.  Based on my review of law enforcement reports and court records, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A.   CBP Intercepts Packages Containing Methylamine

13.  On July 21, 2023, CBP Officer Siu reviewed a manifest that included two packages coming from China to the United States. The shipper for the packages was listed as Shenzhen Duoyi Technology co. ltd., 29th floor, Sanhang Science and Tec,

v

Shenzhen 518000 China. The consignee for the packages was listed

as Sifangze Inc., 30 Columbia Ave. E. STE F1 517 B, Battle

Creek, MI 49015, and the packages were manifested as

"WALLPAPER." CBP Officer Siu placed a hold on the two packages

based on his knowledge that the shipper had previously committed

customs violations.

14.    After the packages arrived at JFK International

Airport in New York, CBP officers conducted a border search. The

two packages were cardboard boxes addressed to BEN, 6265869953,

BEN, and addressed to the San Gabriel Stash House (i.e., 1525 S.

DELTA ST., SAN GABRIEL CA, 91776).

15.    Based on database searches, no person associated with

the address with the San Gabriel Stash House or with the

telephone number (626) 586-9953 has the name "Ben." Based on my

training and experience and knowledge of smuggling

investigations, I know that individuals who attempt to illegally

import contraband, including listed chemicals, often

purposefully mislabel the contraband shipments and address them

to fake recipients to avoid law enforcement detection and to

conceal their involvement in the fraud.

16.    CBP officers examined packages and found a large

silver bag in each box. The silver bags each contained a blue

metal barrel. Inside of the barrels were a clear liquid

substance (i.e., not wallpaper) which presumptively tested

positive for methylamine, a DEA List I chemical.[1] Based on my

training and experience and knowledge of illicit drug

production, methylamine is commonly used by drug traffickers to

manufacture methamphetamine, MDMA, and other controlled

substances.

      B.     <u>HSI Executes a Federal Anticipatory Search Warrant at
the San Gabriel Stash House</u>

      17.   On August 15, 2023, the Honorable Pedro V. Castillo,

United Sates Magistrate Judge for the Central District of

California, signed federal warrants in Case Nos. 23-MJ-4173,

23-MJ-4174, 23-MJ-4175, permitting law enforcement to place

trackers in the two packages addressed to the San Gabriel Stash

House and anticipatory search warrants permitting law

enforcement to search any residence or vehicle in which the drug

packages were opened.  To notify agents that a drug package was

opened, agents placed a radio beacon device --- commonly

referred to as a beeper --- inside each package.  The devices

were not concealed inside the package, so once a package is

opened, the suspect can see the device.

---

[1] The 1988 Chemical Diversion and Trafficking Act (CDTA) and
subsequent amendments placed regulatory control over several
chemicals that have a high propensity to be used to manufacture
controlled substances. These laws provide a system of regulatory
controls and criminal sanctions to address both domestic and
international diversion of important chemicals without
interrupting access to chemicals destined for legitimate
commerce. The CDTA created two categories for the controlled
chemicals: DEA List I (21 CFR 1310.02(a)) and DEA List II (21
CFR 1310.02(b)). Generally, List I chemicals represent precursor
reagents and List II chemicals represent solvents used in the
purification and/or synthesis of controlled substances. These
chemicals require proper handling for hazardous materials,
licensing, and importation declaration documentations before
importation into the United States.

18.   On August 16, 2023, CBP agents conducted surveillance at the San Gabriel Stash House before delivering the two packages.   During surveillance, CBP agents saw HUANG and a suspected co-conspirator load two cardboard boxes that were similar in appearance to the falsely labeled methylamine parcels into a Grey Toyota Camry. HUANG and the co-conspirator then drove together away from the San Gabriel Stash House; HUANG was driving a White Lexus RX350 with Oklahoma License Plate #LGY 498, and the co-conspirator driving the Grey Camry.

19.   After HUANG left the San Gabriel Stash House, an undercover HSI agent delivered the package containing the GPS tracker and triggering radio beacon by delivering the package to the front porch area in front of the residence's front door. HUANG soon returned to the residence.   When he did, he brought the falsely labeled methylamine package inside the residence, and opened it triggering the authorization to search the premises.

20.   Based on my discussion with the HSI SA Nasser Yasin, when HSI agents approached the residence to execute the search warrant, they saw HUANG outside the front door of the residence. Agents saw that HUANG had thrown the radio beacon device on the ground in the front yard and appeared to be heading towards his car in an attempt to leave the stash house.   Agents detained HUANG and executed the search warrant.

21.   In the common areas the San Gabriel Stash House,[2] including the kitchen, dining room, and living room, HSI agents found a significant quantity of hazardous chemicals, precursor chemicals, listed chemicals, and other items commonly used to manufacture controlled substances, including:

a.   Two blue plastic 5-gallon containers approximately 2/3 full of clear liquid with a silver color thick foil wrapper;

b.   A blue plastic 5-gallon container full of clear liquid and labeled "Lab Alley Essential Chemicals Hydrogen Peroxide 35% Aqueous Solution, Lab" with an oxidizer 5.1 warning label;

c.   A dark brown 1-liter bottle full of liquid and labeled "Thermo Scientific Cyclohexyl chloride, 98%" inside of a cardboard box with a flammable liquid warning label;

d.   13 1-liter glass jars with red lids full of clear liquid and labeled "Thermo Scientific Cyclohexyl chloride, 98%"

e.   A 1-quart plastic bottle full of yellowish liquid and labeled "hydrochloric acid, 37% ACS grade";

f.   A 500-ml dark-colored glass jar full of clear liquid and labeled "ammonium hydroxide";

g.   Nine empty 16-ounce glass jars with lid;

h.   A 16-ounce glass jar with lid containing a dark brown, honey-like residue substance;

i.   16 1-quart plastic bottles full of clear liquid and labeled "methanol technical grade" and "flammable";

---

[2] In addition to the common areas, the residence has two bedrooms. One appeared to be occupied by a suspected co-conspirator who was not there. The other was occupied by HUANG and his girlfriend..

j.    A 1-quart plastic bottle approximately 3/4 full of clear liquid and labeled "methanol technical grade" and "flammable";

k.    24 64-ounce plastic bottles full of clear liquid and labeled "Pure Bright Clear Ammonia";

l.    A 35.3-ounce white container with blue lid factory sealed full of fine white powder and labeled "taurine";

m.    Two silver 1-gallon containers full of clear liquid and labeled "xylene"; and

n.    A silver bottle with white, salt-like crystals on the outside labeled "hydrogen sulfide."

22.   Below is photograph depicting a common area of the San Gabriel Stash House showing boxes containing some of the chemicals described above which are clearly labeled with warning labels, including "flammable liquid" warnings:



x

23.   HSI found two cardboard boxes with laboratory glassware and a pressure valve in the living room.  HSI seized a significant quantity of chemicals and laboratory equipment from the San Gabriel Stash House, as depicted in the following photograph:



24.   Inside HUANG's bedroom,[3] HSI agents found a desk area that appeared to be used as a drug packaging area. Specifically, agents found large quantities of suspected ketamine[4] in various packages, as well as drug packaging materials:



25.   In total, HSI found approximately 2.66 kilograms of suspected ketamine in both large and small plastic bags in HUANG's bedroom. In that bedroom, agents also found a 500-ml

---

[3] This bedroom had HUANG's girlfriend's luggage and identification documents and a check with HUANG's name as the "remitter." In addition, both HUANG and his girlfriend told HSI that this was their bedroom.

[4] Ketamine is a Schedule III federally controlled substance. LAPD detectives used a Thermo Scientific Gemini Analyzer to test the substance and it tested presumptively positive for ketamine.

dark colored glass bottle factory sealed, full of clear liquid, and labeled "Iodine Solution Lugol's Weak 2%." Based on my training and experience, iodine is an extremely hazardous chemical if inhaled or touched by bare skin without proper safety equipment.

26. During the search of the San Gabriel Stash House, HSI agents also found other indicia of drug production and trafficking, including multiple notebooks with handwritten Chinese notes inside HUANG's bedroom and one in his car. On August 16, 2023, Los Angeles County Sheriff's Department Deputy Song, who can read Chinese, reviewed some of the pages from the notebook found in HUANG's car. Deputy Song said that, based on his review of the notebook, he believed the writing included instructions for manufacturing controlled substances. Investigation and translation of the notebooks recovered from the residence and HUANG's car is ongoing as they contain dozens of pages of handwritten Chinese, at least some of which appears to be in coded language.

27. On August 16, 2023, I spoke with Los Angeles Police Department Detective John Hong. Detective Hong has over twenty years of drug investigation experience, including eighteen years as part of a clandestine drug lab response team. Detective Hong told me that, based on his review of the chemicals in the residence, he believed that the chemicals and laboratory equipment were likely for the purpose of manufacturing MDMA. Detective Hong preliminarily estimated that the type and amounts

of chemicals found inside the San Gabriel Stash House could be used to manufacture over 20 pounds of MDMA.

V.   CONCLUSION

28.   For all the reasons described above, there is probable cause to believe that Ze Xian HUANG has committed a violation of 21 U.S.C. § 856(a)(1): Maintaining a Drug-Involved Premises.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 18th   day of
August, 2023.

_____
HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE